**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

KENNETH ARNETT SOLOMON                    :
                                                                      :
                                      Plaintiff,         :
                                                                      :
            v.                                               :      C. A. No. 12-1406-RGA-MPT
                                                                      :
CAROLYN W. COLVIN,                            :
ACTING COMMISSIONER OF SOCIAL      :
SECURITY                                              :
                                                                      :
                                      Defendant.      :

## REPORT AND RECOMMENDATION

## I.        INTRODUCTION

On November 7, 2012, plaintiff Kenneth Arnett Solomon ("plaintiff") filed this

action against defendant Carolyn W. Colvin, Acting Commissioner of Social Security

("defendant").[1]  Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a

decision by defendant denying his application for disability insurance benefits ("DIB")

under Title II of the Social Security Act.  Presently before the court are the parties'

cross-motions for summary judgment.  For the reasons set forth below, the court

recommends plaintiff's motion for summary judgment be granted, defendant's cross-

motion for summary judgment be denied, and remand to the ALJ for further

consideration.

## II.       BACKGROUND

### A.        Procedural History

---

[1] Carolyn W. Colvin became the Commissioner of Social Security on February 13, 2013, after this proceeding was initially filed.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure ("FED. R. CIV. P."), Carolyn W. Colvin replaced the previous Commissioner, Michael J. Astrue, as defendant in this case.

On December 29, 2009, plaintiff applied for DIB[2] alleging disability since October 26, 2009, due to low back pain and depression.[3]  Plaintiff's application was initially denied on May 12, 2010, and after reconsideration on September 28, 2010, plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on October 22, 2010.[4]

On August 18, 2011, ALJ Judith Showalter held a video hearing at which plaintiff, who was represented by counsel, and a vocational expert ("VE") appeared and testified.[5]  In a decision dated September 19, 2011, the ALJ found plaintiff not disabled.[6]  On September 14, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's decision,[7] making the ALJ's decision the final decision of the Commissioner.

On November 7, 2012, plaintiff filed a complaint seeking judicial review of the ALJ's September 19, 2011 decision.[8]  On April 9, 2013, plaintiff filed a motion for summary judgment.[9]  In response, on May 8, 2013, defendant filed a cross-motion for summary judgment.[10]

### B.    Non-Medical History

Plaintiff was born on February 15, 1962.[11]  He was forty-seven years old at the onset of his alleged depression and back disorder.[12]  He obtained a GED in 1989, and did not attend special education classes while in school.[13]  He worked in the past as a

---

[2] D.I. 9 at 917-18.
[3] *Id.* at 18-19.
[4] *Id.* at 18; D.I. 12 at 1.
[5] D.I. 9 at 879-916.
[6] *Id.* at 18-30.
[7] *Id.* at 1-6, 14.
[8] D.I. 1.
[9] D.I. 11.
[10] D.I. 14.
[11] D.I. 9 at 884.
[12] *See id.  See also* D.I. 12 at 2.
[13] D.I. 9 at 885-86.

mail handler (semiskilled and light work as both generally and actually performed) and cleaner (unskilled and heavy work as generally performed and unskilled and medium work as actually performed).[14]

The relevant time period for purposes of review in this case is October 26, 2009, plaintiff's alleged disability onset date, through September 19, 2011, the date of the ALJ's decision.[15]

### C.   Medical History

#### 1.   Pre-Onset Date

Plaintiff served in the Army from May 4, 1979 to August 1, 1979 and from June 25, 1983 to December 12, 1984.[16]  In 1983, he injured his back in a service-related Jeep accident and, in subsequent years, reported periodic exacerbations of low back pain.[17] He also has a history of depression, anxiety, and cocaine, crack, marijuana, heroin, opioid, and alcohol abuse.[18]  Plaintiff was employed as a housekeeper at the Wilmington Veterans Administration Medical Center ("WVAMC")–where he has received virtually all of his medical care in this case–beginning in March 2008, after transferring to that facility from the Philadelphia Veterans Administration Medical Center ("PVAMC"), where he also worked as a housekeeper and previously received his medical care.[19]

On April 3, 2008, Robert Dewey, NP-C, a nurse practitioner at WVAMC and

---

[14] *Id.* at 911-12, 996-97, 1031-35.  Discussion of plaintiff's past work is limited, since the ALJ conceded plaintiff cannot perform any of his past relevant work.  *Id.* at 29.

[15] *See infra* Part II.C.

[16] D.I. 9 at 976, 1992.

[17] *Id.* at 1454.

[18] *Id.* at 1456, 1482, 1500, 1504, 1509.

[19] *Id.* at 1456, 1499, 1504.

plaintiff's primary care treating source, saw plaintiff for the first time.[20]  Plaintiff stated he was previously treated for substance abuse as an inpatient and was now using drugs again.[21]  Nurse practitioner Dewey noted plaintiff's history of low back pain, alcohol and drug abuse, depression, and anxiety, and at plaintiff's request, referred him for a substance abuse evaluation.[22]

On April 25, 2008, Wendy Witmer, LCSW, performed a substance abuse assessment.[23]  Plaintiff told Witmer he had not used alchohol, crack cocaine, or marijuana in more than a month.[24]  Witmer noted plaintiff was presently assessed with 40 percent service-connected disability due to a back strain.[25]  Following an interview and mental status examination, Witmer diagnosed depression and polysubstance abuse; assigned plaintiff a global assessment of functioning score ("GAF") of 65, reflective of only mild or moderate symptoms or limitations; and referred him to both a psychologist and psychiatrist at WVAMC.[26]

On June 19, 2008, Michelle Washington, Ph.D., a psychologist, saw plaintiff for the first time.[27]  She indicated plaintiff had recently been discharged from MeadowWood Hospital following a voluntary admission resulting from an angry altercation with his

---

[20] *Id.* at 40.
[21] *Id.* at 1504.
[22] D.I. 9 at 1505.
[23] *Id.* at 1498-1503.
[24] *Id.* at 1500.
[25] *Id.* at 1498.

[26] *Id.* at 1503.  The GAF scale ranges from zero to 100 and is used by a clinician to indicate overall judgment of a person's psychological, social, and occupational functioning on a scale devised by the American Psychiatric Assocation.  AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS-TEXT REVISION 34 (4th ed. 2000).  A GAF of 61 to 70 is assigned to a person who has only "some mild" symptoms or only "some" difficulty in social, occupational, or school functioning, but generally functions "pretty well" and has some meaningful relationships.  *See id.*

[27] D.I. 9 at 1480-82.

WVAMC housekeeping supervisor.[28]  Dr. Washington's clinical impressions were major depression, anxiety disorder, and cocaine, opioid, and alcohol dependence, and she assessed plaintiff with a GAF score of 55.[29]

On June 30, 2008, John Donnelly, M.D., a psychiatrist, saw plaintiff at WVAMC.[30] Plaintiff told Dr. Donnelly he was no longer using drugs or alcohol and was attending AA meetings.[31]  The results of Dr. Donnelly's mental status examination of plaintiff were essentially normal.[32]  Dr. Donnelly's Axis I diagnoses were major depression, anxiety disorder, and cocaine, opioid, and alchol dependence, and he assigned plaintiff a GAF score of 55.[33]  Dr. Donnelly also renewed plaintiff's prescriptions for Trazodone and Fluoxetine.[34]

On July 23, 2008, plaintiff told Dr. Washington he had used cocaine, alcohol, and marijuana for two days the previous week.[35]

On April 3, 2009, plaintiff told Dr. Washington he was experiencing job-related stress, financial difficulties, and back pain, but had not used drugs or alcohol for nine months and was now attending AA/NA meetings.[36]  Plaintiff's mental status evaluation was benign, and Dr. Washington counseled plaintiff on the interaction between his depression and substance abuse.[37]

---

[28] *Id.* at 1482, 1489.
[29] *Id.* at 1482.  A GAF score of 51 to 60 indicates an individual has moderate symptoms or moderate difficulty in social, occupational, or school functioning.  AMERICAN PSYCHIATRIC ASS'N, *supra* note 26, at 34.
[30] D.I. 9 at 1479-80.
[31] *Id.* at 1479.
[32] *Id.* at 1480.
[33] *Id.* at 1482.
[34] *Id.* at 1479-80.
[35] *Id.* at 1476.
[36] D.I. 9 at 1414.
[37] *Id.* at 1415.

On October 2, 2009, shortly before his onset, plaintiff complained of increased low back pain, which prevented him from working.[38]  An examination revealed pain on palpation of the sacral area, and his medications were refilled.[39]  On October 9, 2009, plaintiff told Dr. Donnelly his housekeeping job was "stressing him out," and Dr. Donnelly again assigned plaintiff a GAF score of 55.[40]

### 2.    Post-Onset Date

Plaintiff alleges his disability started on October 26, 2009.[41]  He also reported he stopped working on that date.[42]

### a.    Examinations at WVAMC

On November 10, 2009, Dr. Malhotra performed a physical examination of plaintiff which showed he had a normal gait; no focal neurological deficits; full forward flexion in the trunk of the body, with limited extension and side bending; and, tenderness over the right lumbar facets.[43]  Dr. Malhotra noted plaintiff demonstrated pain behavior, moved slowly and awkwardly, and had difficulty lifting his legs off the examination table.[44]  Dr. Malhotra diagnosed plaintiff with chronic low back pain due to mild spondylosis and left lower extremity pain of unclear etiology, and she cleared plaintiff to return to work on November 12, 2009.[45]  However, plaintiff stated he tried to return to work, but was unable to do so on that or the previous day.[46]

---

[38] *Id.* at 1129.
[39] *Id.* at 1130.
[40] *Id.* at 1360.
[41] *Id.* at 974.
[42] D.I. 9 at 888-91, 995-96, 974.
[43] *Id.* at 1126.
[44] *Id.*
[45] *Id.* 1126-27.
[46] *Id.* at 1122.

On December 3, 2009, plaintiff was seen for a follow-up visit at WVAMC in connection with his chronic back pain.[47]  He reported suicidal thoughts, stress related to his job, low back pain, guilt, and difficulty sleeping.[48]  He denied homicidal ideation, psychotic features, or actual suicide attempt.[49]  Plaintiff was evaluated, kept overnight, and discharged the following morning in stable condition.[50]

On December 24, 2009, Dr. Washington examined plaintiff and reported a depressed mood and anxiety.[51]  In addition, Dr. Washington performed a mental status examination and gave plaintiff the opportunity to ventilate.[52]  Plaintiff stated his "physical and emotion issues, 'make [him] not feel like a man.'"[53]  Dr. Washington reported plaintiff had an anxious, depressed, and tearful mood, but otherwise was calm, cooperative, appropriately dressed, and no suicidal or homicidal ideation.[54]

On January 19, 2010, Dr. Washington reported plaintiff's family history.[55]  She listed "traumatic events" in plaintiff's life including his mother being abused, witnessing his brother death, and his nephew's suicide by hanging.[56]  His father was noted to be an alcoholic.[57]

On February 3, 2010, plaintiff underwent a neurology evaluation with Dr. Hanspal, where he reported low back pain with a numbing sensation, no weakness in

---

[47] *Id.* at 1227.
[48] D.I. 9 at 1227.
[49] *Id.*
[50] *Id.* at 1227, 1230.
[51] *Id.* at 1105.
[52] *Id.* at 1590.
[53] *Id.*
[54] D.I. 9 at 1590.
[55] *Id.* at 1091.
[56] *Id.*
[57] *Id.*

the left leg, and taking opioids to control the pain.[58]  He walked using a cane.  The examination revealed plaintiff leaned to the right while seated, had tenderness in the right lumbar region at L4-5, and experienced pain in the trigger areas.[59]  Dr. Hanspal's diagnosis was chronic back pain with no evidence of radiculopathy, and he administered Lidocaine trigger point injections.  During a follow-up visit on February 9, plaintiff reported no improvement.[60]

On February 10, 2010, Dr. Washington completed a Certification of Health Care Provider under the Family and Medical Leave Act ("FMLA").[61]  His diagnoses included major depressive disorder evidenced by a daily depressed mood most of the day, markedly diminished interests in activities, fatigue/loss of energy, feelings of worthlessness, diminished ability to concentrate, and recurrent suicidal ideation.[62]  Dr. Washington concluded plaintiff was unable to work full-time indefinitely due to his condition.[63]  Treatment included psychotherapy and medication management.[64]

On March 4, 2010, plaintiff had a follow-up visit with Nurse Practitioner Dewey for his back pain.[65]  Plaintiff reported neither morphine nor physical therapy had improved his pain, and advised he was limiting his intake of pain medication due to excessive sweating and diarrhea.[66]  He was directed to wean off opioid medication in light of the lack of response.[67]  Dewey opined on the FMLA form that plaintiff was unable to work a

[58] *Id.* at 1260.
[59] *Id.* at 1260-61.
[60] D.I. 9 at 1258.
[61] *Id.* at 1176-78.
[62] *Id.* at 1176.
[63] *Id.*
[64] *Id.* at 1177.
[65] *Id.* at 1250.
[66] D.I. 9 at 1250.
[67] *Id.* at 1253.

8

full-time job for an indefinite period of time due to back pain.[68]

Plaintiff attended physical therapy at WVAMC from approximately December 2009 to March 2010.[69]  Treatment modalities included ultrasound, massage, moist heat, manual therapy, and therapeutic exercise.[70]  The physical therapist noted plaintiff's low back pain was due to mild spondylosis, and usually felt "good" after physical therapy session.  Plaintiff, however, reported no overall improvement in his back pain upon discharge from therapy on March 16, 2010.[71]

### b.    Brian Simon, Psy.D.–SSA Consultative Psychologist

On March 30, 2010, Dr. Simon performed a consultative psychological evaluation at the request of the Social Security Administration ("SSA").[72]  Plaintiff reported the following:  a history of back problems and depression since his vehicular accident in 1983;[73] past hospitalizations for suicidal ideation on three occasions; currently receiving mental health treatment at WVAMC; and presently experiencing poor energy and motivation, difficulty sleeping, daily crying spells, poor appetite, and increased stress.[74]  Plaintiff also advised smoking cigarettes on a daily basis, but denied any alcohol or illicit drug consumption for twenty months.[75]  The evaluation revealed plaintiff to be fully oriented, guarded, and reserved, and displayed fair concentration, attention, good eye contact, a depressed mood and constricted affect.  Plaintiff was found to have fair-to-

---

[68] *Id.* at 1173.
[69] *Id.* at 1900-11, 1915-21.
[70] *Id.*
[71] *Id.* at 1900, 1921.
[72] D.I. 9 at 1132-36.
[73] *Id.* at 1132.
[74] *Id.* at 1132-33.
[75] *Id.* at 1133.

poor judgment and insight; coherent, relevant, and goal-directed speech; an appropriate activity level; limited abstraction ability; no signs of hyperactivity; and a good immediate memory with poor short-term memory.[76]  Plaintiff denied any hallucinations; or feeling actively suicidal.  He used a cane for ambulation; was unable to perform serial calculations without any errors; and did not appear anxious.[77]  Dr. Simon's Axis I diagnoses were major depressive disorder and polysubstance dependence, in full sustained remission.  He assigned plaintiff a GAF score of 48, indicative of serious/borderline moderate symptoms of limitations.[78]

In his report dated March 30, 2010, Dr. Simon opined plaintiff had a moderately severe impairment in sustaining work performance and attendance in a normal work setting and coping with pressures of ordinary work.[79]  However, he found plaintiff only had moderate impairment in carrying out instructions and performing routine, repetitive tasks under ordinary supervision.[80]  Dr. Simon also noted only a mild impairment to understand simple, primarily oral, instructions.[81]

### c.    Brian L. Brice, M.D.–SSA Consultative Examiner

On April 2, 2010, Dr. Brice performed a consultative physical examination of plaintiff at the behest of the SSA.  At that time, plaintiff reported a history of persistent and radiating low back pain and numbness, depression, and drug addiction.[82]  Dr.

---

[76] *Id.* at 1134-35.
[77] *Id.*
[78] D.I. 9 at 1136.  A GAF score of 41 to 50 indicates an individual has serious symptoms or serious impairment in social and occupational functioning. AMERICAN PSYCHIATRIC ASS'N, *supra* note 26, at 34.
[79] D.I. 9 at 1138.  "Moderately severe" means an impairment which seriously affects ability to function. *Id.*
[80] *Id.*  "Moderate" means an impairment which affects but does not preclude ability to function.
[81] *Id.*  "Mild" means suspected impairment of slight importance which does not affect ability to function.
[82] *Id.* at 1153.

Brice's examination revealed plaintiff was able to make smooth transfers, but had an antalgic gait and walked with a cane.[83]  He concluded plaintiff could perform full-time sedentary work with customary breaks; should avoid activities that require lifting, bending, and prolonged standing; and be permitted to use a single-point cane and back brace for regular work duty.[84]

### d.   Jane Brandon, Ph.D. & Carlene Tucker-Okine, Ph.D.–State Agency Medical Consultants

On April 1, 2010, Dr. Brandon reviewed the record as of that date, including Dr. Simon's consultative report, and concluded plaintiff's depression and substance addiction disorder caused only mild restrictions in his activities of daily living; only mild difficulties maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and noted one or two repeated episodes of decompensation, each of an extended duration.[85]  Dr. Brandon also considered plaintiff's ability to perform certain work-related mental activities by completing a "Summary Conclusions" Worksheet.[86]  Out of the twenty mental activities listed therein, Dr. Brandon determined plaintiff had no significant limitations in sixteen activities and only moderate limitations in the remaining four.[87]  With respect to his mental residual functional capacity ("RFC"), Dr. Brandon concluded plaintiff's mental impairments did not preclude him from engaging in routine workplace tasks.[88]

On September 14, 2010, Dr. Tucker-Okine completed a Psychiatric Review

---

[83] *Id.*
[84] *Id.*
[85] D.I. 9 at 1139-49.
[86] *Id.* at 1150-51.
[87] *Id.*
[88] *Id.* at 1152.

Technique[89] and a Medical RFC Assessment[90] affirming Dr. Brandon's April 1, 2010 opinions.[91]

### e.   Carl Bancoff, M.D. & Anne Aldridge, M.D.–State Agency Medical Consultants

On May 11, 2010, Dr. Bancoff completed a Physical RFC Assessment.[92]  Dr. Bancoff opined plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for at least 2 hours, and sit for about 6 hours in an 8-hour workday.[93]  He found plaintiff could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl,[94] but should never climb ladders, ropes, or scaffold,[95] and avoid concentrated exposure to cold, extreme heat, and hazards.[96]

On September 22, 2010, Dr. Aldridge completed a case analysis affirming Dr. Bancoff's May 11, 2010 opinion.[97]

### f.   Department of Veterans Affairs ("VA") Decision

On August 9, 2010, the VA ruled plaintiff's major depressive disorder was 70 percent disabling as of December 2009, and plaintiff was entitled to a monthly benefit amount of $1,547.00 beginning on January 1, 2010.[98]

### D.   Administrative Hearing Testimony

#### 1.   Plaintiff's Testimony

---

[89] *Id.* at 1513-23.
[90] *Id.* at 1524-26.
[91] *See supra* notes 89-90 and accompanying text.
[92] D.I. 9 at 1157-64.
[93] *Id.* at 1158.
[94] *Id.* at 1159.
[95] *Id.*
[96] *Id.* at 1161.
[97] *Id.* at 1527.
[98] D.I. 9 at 1992-95.

Plaintiff testified he stopped employment in October 2009 because of his inability to work on a regular basis.[99]  He described back and leg pain with numbness radiating down both legs, with swelling, and increased pain with any activity.[100]  He rated his pain as five to nine on a ten-point scale, which had worsened over time, despite treatment.[101]  He can walk no more than a few minutes without pain.[102]  He has excruciating pain when standing for one hour; can sit for only one hour; and can lift about five pounds. He does home exercises.[103]

Plaintiff testified he has a history of substance abuse; however, he denied using alcohol at the time of the hearing, except for an occasional beer.[104]  He experienced mental health problems and wanted to kill himself every day, with medications suppressing such urges.[105]  He has problems with memory and concentration, and difficulty sleeping.[106]  He has a sponsor through Narcotics Anonymous, but he does not attend meetings because of discomfort with standing.[107]

He lives with his wife and granddaughter, but isolates himself.[108]  He can manage his personal hygiene, but his wife does all the cooking, and he does not do any household chores.[109]  His wife and daughters do the grocery shopping.[110]  He has not been out to eat for the past five months; however, he went to the beach once with his

---

[99] *Id.* at 890.
[100] *Id.* at 891.
[101] *Id.* at 893.
[102] *Id.* at 901.
[103] *Id.* at 900-02, 909.
[104] D.I. 9 at 896-97.
[105] *Id.* at 899-900.
[106] *Id.* at 902.
[107] *Id.* at 896-97.
[108] *Id.* at 885, 907.
[109] *Id.* at 903.
[110] D.I. 9 at 904.

granddaughter, which was very difficult.[111]

## 2.    VE's Testimony

The VE testified a hypothetical individual with plaintiff's limitations and impairments, including his age, education, and work history, could perform simple, light unskilled work,[112] including a control worker,[113] final inspector,[114] and hand bander.[115] The unskilled, sedentary jobs such a person couls perform included dial marker,[116] type copy examiner,[117] and bench hand.[118]  The VE opined an individual similar to plaintiff is limited to light exertional work, not at a production pace, with the ability to perform occasional postural activities, except climbing ladders, ropes, or scaffolds, and should avoid concentrated exposure to temperature extremes, hazards, and vibration.[119]  The VE further testified an individual who needed more than a lunch break and two fifteen minute breaks each day[120] or who was absent more than once a month could not maintain any unskilled jobs.[121]  The VE also concluded plaintiff could not perform his past work.[122]

---

[111] *Id.* at 907-08.

[112] *Id.* at 912.  "Unskilled work" means work which requires little or no judgment to do simple duties that can be learned on the job in a short period of time.  20 C.F.R. § 404.1568(a).  A person can usually learn to perform an unskilled job in thirty days, and little specific vocational preparation and judgment are needed.  *Id.*

[113] 1,850 jobs regionally and 271,500 jobs nationally.  D.I. 9 at 913-14.

[114] 1,100 jobs regionally and 190,500 jobs nationally.  *Id.*

[115] 1,700 jobs regionally and 162,500 jobs nationally.  *Id.*

[116] 1,300 jobs regionally and 111,900 jobs nationally.  *Id.*

[117] 2,400 jobs regionally and 270,800 jobs nationally.  *Id.*

[118] 1,300 jobs regionally and 188,650 jobs nationally.  *Id.*  Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  20 C.F.R. § 404.1567(a).  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary.  *Id.*

[119] D.I. 9 at 912.

[120] *Id.* at 915.

[121] *Id.*

[122] *Id.* at 912.

### E.      ALJ's Decision

In a decision dated September 19, 2011, the ALJ determined despite severe impairments of depression, substance abuse, and lumbar degenerative disc disease, plaintiff retained the RFC to perform light work, except he could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could never climb ladders, ropes, or scaffolds; should avoid concentrated exposure to temperature extremes, hazards, and vibration, and is limited to simple unskilled work not at a production pace.[123]   The ALJ acknowledged plaintiff could not perform any of his past relevant work, but was employable as a control worker, final assembler, hand bander, dial marker, type copy examiner, and bench hand.[124]   The ALJ found plaintiff not disabled under the Act because he retained the ability to perform work existing in significant numbers in the national economy.[125]

## III.    JURISDICTION

A district court's jurisdiction to review an ALJ's decision regarding disability benefits is controlled by 42 U.S.C. § 405(g).  The statute provides "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain review of such decision by a civil action."[126]   The Commissioner's decision becomes final when the Appeals Counsel affirms an ALJ opinion, denies review of an ALJ decision, or when a claimant fails to pursue available

---

[123] *Id.* at 20-29.
[124] *Id.* at 29-30.
[125] D.I 9 at 29-30.
[126] 42 U.S.C. § 405(g) (2002).

administrative remedies.[127]   In the instant matter, the Commissioner's decision became final when the Appeals Counsel affirmed the ALJ's denial of benefits.[128]   Thus, this court has jurisdiction to review the ALJ's decision.

## IV.   PARTIES' CONTENTIONS

### A.   Plaintiff's Contentions

Plaintiff argues the ALJ's decision should be reversed, or alternatively, should be remanded for a new hearing and decision, based on the following reasons that the ALJ failed to properly weigh the medical opinions; properly evaluate plaintiff's credibility; (3) adequately consider the VA disability determination; and (4) relied on flawed VE testimony.[129]

First, plaintiff contends the ALJ failed to give proper weight to the medical opinions of treating physicians, Drs. Washington and Simon.[130]   Instead, the ALJ attributed "significant weight" to the opinions of the State agency psychologists who never treated or examined plaintiff.[131]   Plaintiff asserts the ALJ's reasoning was "vague."[132]   Plaintiffs further argues even if controlling weight was not required, the ALJ failed to indicate what weight was given because she did not address the required factors in 20 C.F.R. § 404.1527(c)(2)-(6).[133]

Second, plaintiff asserts the ALJ credibility determination was inappropriately

---

[127] *Aversa v. Sec'y of Health & Human Servs.*, 672 F.Supp. 775, 777 (D.N.J. 1987); *see also* 20 C.F.R. § 404.905 (2002).
[128] D.I. 9 at 1-6.
[129] D.I. 12 at 1, 20.
[130] *Id.* at 12-16.
[131] *Id.* at 13.
[132] *Id.* at 14.
[133] *Id.*

based on her observation of plaintiff at the hearing.[134]  Under the two-step credibility

process for administrative hearings, plaintiff maintains the ALJ's opinion was improper

since it was based on her layperson's observation of plaintiff during the hearing.[135]

Third, plaintiff purports the ALJ failed to indicate the weight afforded to the VA

award of disability benefits, even though the ALJ noted the VA applied a different

standard of disability.[136]

Lastly, plaintiff contends the ALJ relied on flawed VE testimony because the ALJ

relied on a hypothetical question which did not accurately describe plaintiff's recognized

mental limitations.[137]  Although it was undisputed plaintiff could not perform his past

work, the ALJ relied on the VE to determine he could perform various other available

jobs in the economy.[138]

### B.      Defendant's Contentions

Defendant counters the ALJ's decision was based on substantial evidence in the

record, and, accordingly, should be affirmed because the ALJ:  (1) properly weighed the

medical opinions; (2) appropriately evaluated plaintiff's credibility; (3) adequately

considered the VA disability determination; and (4) thoroughly evaluated all relevant

evidence before concluding plaintiff retained the RFC to perform a range of simple,

unskilled light work.[139]

Defendant initially argues substantial evidence supports the ALJ properly

---

[134] *Id.* at 17.
[135] D.I. 12 at 16-17.
[136] *Id.* at 18.
[137] *Id.* at 18-20.
[138] *Id.* at 19.
[139] D.I. 15 at 2, 25.

weighed the medical opinions of Drs. Washington and Simon.[140]  The ALJ opined Dr.

Washington's opinion was not given full weight because (1) it was not well supported by

the doctor's own objective findings; (2) the treating psychiatrist's, Dr. Donnelly, status

evaluations showed plaintiff was alert, fully oriented, and pleasant, among other

favorable findings; (3) two state agency psychological consultants concluded plaintiff

had the RFC to perform routine workplace tasks; and (4) based on the record as a

whole.[141]

The ALJ did not give full weight to Dr. Simon's opinion because (1) he was not a

treating source, and only examined plaintiff one time; (2) it was inconsistent with his

objective findings, as well as Drs. Washington and Donnelly's objective mental status

examinations; (3) the state agency psychologists found plaintiff had no more than

moderate work-related mental limitations; and (4) it was based in significant part on

plaintiff's subjective representations.[142]

Second, defendant contends substantial evidence supports the ALJ properly

weighed plaintiff's testimony.[143]  The ALJ discounted plaintiff's allegations of totally

disabling mental and physical limitations and pain because those allegations were

inconsistent with the objective medical tests; the conclusions of two state agency

medical consultants; the objective examinations by Drs. Washington and Donnelly;

plaintiff's request in November 2009 to be released to return to work; and (5) the

conservative back treatment, which did not include any surgeries.[144]

---

[140] *Id.* at 19.
[141] *Id.* at 19-20.
[142] *Id.* at 20-21.
[143] *Id.* at 21.
[144] *Id.* at 22.

Third, defendant asserts substantial evidence supports the ALJ appropriately considered the VA's disability rating of plaintiff because a disability determination by another governmental agency is not binding on the Commissioner; the Social Security disability process is not a pro-claimant system, unlike the Department of Veterans' Affairs system; and a VA disability determination does not take into account medical-vocational guidelines, or a person's age, unlike a Social Security disability determination.[145]

Lastly, defendant argues substantial evidence supports the ALJ's reliance on the VE's testimony because the hypothetical questioning of the VE carefully took into account all of plaintiff's significant limitations.[146]

## V.   STANDARD OF REVIEW

### A.   Summary Judgment

In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the nonmoving party[,]' but [refraining from] weighing the evidence or making credibility determinations."[147]  If there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.[148]

This standard does not change merely because there are cross-motions for summary judgment.[149]  Cross-motions for summary judgment

are no more than a claim by each side that it alone is entitled to summary

---

[145] D.I. 15 at 23.
[146] *Id.* at 24.
[147] *Reeves v. Sanderson Plumbing, Prods., Inc.*, 530 U.S. 133, 150 (2000).
[148] *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).
[149] *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[150]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[151]

## B.     ALJ's Findings

Section 405(g) sets forth the standard of review of the ALJ's decision by the district court.  The court may reverse the Commissioner's final determination only if the ALJ did not apply the proper legal standards, or the record did not provide substantial evidence to support the ALJ's decision.  The Commissioner's factual decisions are upheld if supported by substantial evidence.[152]  Substantial evidence means less than a preponderance, but more than a mere scintilla of evidence.[153]  As the United States Supreme Court has found, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[154]

In determining whether substantial evidence supports the Commissioner's findings, the court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record.[155]  The court's review is limited to the evidence that was actually presented to the ALJ.[156]  The Third Circuit has explained that

---

[150] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).
[151] *Krupa v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).
[152] *See* 42 U.S.C. *§§* 405(g), 1383(c)(3); *see also Monsour Medical Center v. Heckle*m, 806 F.2d 1185, 1190 (3d Cir. 1986).
[153] *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).
[154] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[155] *See Monsour*, 806 F.2d at 1190.
[156] *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001).

a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., evidence offered by treating physicians) or if it really constitutes not evidence but mere conclusion."[157]  Thus, the inquiry is not whether the court would have made the same determination, but rather whether the Commissioner's conclusion was reasonable.[158]  Even if the court would have decided the case differently, it must defer to the ALJ, and affirm the Commissioner's decision so long as that decision is supported by substantial evidence.[159]

When review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision.[160]  In *Securities & Exchange Commission v. Chenery Corp.*,[161] the Supreme Court found that a "reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."[162]  The Third Circuit has recognized the applicability of this finding in the Social Security disability context.[163]  Thus, this court's review is limited to the four corners of the ALJ's decision.

---

[157] *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).
[158] *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).
[159] *See Monsour*, 806 F.2d at 1190-91.
[160] *See Hansford v. Astrue*, 805 F. Supp. 2d 140, 144-45 (W.D. Pa. 2011).
[161] *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947).
[162] *Id.*
[163] *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001).

## VI.     DISCUSSION

### A.     Disability Determination

Title 11 of the Social Security Act, 42 U.S.C. § 423(a)(l)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability."[164]   In order to qualify for DIB, the claimant must establish that he was disabled prior to the date he was last insured.[165]   A "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[166]   A claimant is disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[167]

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis.[168]   If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further.[169]   At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity.  If the claimant is engaged in substantial

---

[164] *Bowen*, 482 U.S. at 140.
[165] *See* 20 C.F.R. § 404.131.
[166] *See* 42 U.S.C. §§ 423(d)(l)(A), 1382(c)(a)(3).
[167] *Id.* § 423(d)(2)(A); *Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003).
[168] *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422,427-28 (3d Cir. 1999).
[169] 20 C.F.R. § 404.1520(a)(4).

gainful activity, a finding of non-disabled is required.[170]  If the claimant is not engaged in

substantial gainful activity, step two requires the Commissioner to determine whether

the claimant is suffering from a severe impairment or a combination of impairments that

is severe.  If the claimant is not suffering from a severe impairment or a combination of

impairments that is severe, a finding of non-disabled is required.[171]

If the claimant's impairments are severe, the Commissioner, at step three,

compares the claimant's impairments to a list of impairments (the "listings") that are

presumed severe enough to preclude any gainful work.[172]  When a claimant's

impairment or its equivalent matches an impairment in the listing, the claimant is

presumed disabled.[173]  If a claimant's impairment, either singularly or in combination,

fails to meet or medically equal any listing, the analysis continues to steps four and

five.[174]  At step four, the Commissioner determines whether the claimant retains the

RFC to perform his past relevant work.[175]  A claimant's RFC is "that which an individual

is still able to do despite the limitations caused by [his] impairment(s)."[176]  "The claimant

bears the burden of demonstrating an inability to return to [his] past relevant work."[177]

If the claimant is unable to return to his past relevant work, step five requires the

Commissioner to determine whether the claimant's impairments preclude him from

adjusting to any other available work.[178]  At this last step, the burden is on the

---

[170] See id. § 404.1520(a)(4)(i).
[171] See id. § 404.1520(a)(4)(ii).
[172] See id. § 404.1520(a)(4)(iii); see also Plummer, 186 F.3d at 428.
[173] See 20 C.F.R. § 404.1520(a)(4)(iii).
[174] See id. § 404.1520(e).
[175] See 20 C.F.R. § 404.1520(a)(4)(iv); Plummer, 186 F.3d at 428.
[176] Fargnoli, 247 F.3d at 40.
[177] Plummer, 186 F.3d at 428.
[178] See 20 C.F.R. § 404.1520(g) (mandating finding of non-disability when claimant can adjust to other work); see also Plummer, 186 F.3d at 428.

Commissioner to show the claimant is capable of performing other available work before denying disability benefits.[179]  In other words, the Commissioner must prove "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his] medical impairments, age, education, past work experience, and [RFC]."[180]  In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments.[181]  At this step, the ALJ often seeks the assistance of a VE.

### B.     Plaintiff's Back Pain & Depression

#### 1.     Medical Opinions

##### a.     Drs. Washington & Simon

Plaintiff initially contends the ALJ improperly weighed the medical opinions of treating physicians, Drs. Washington and Simon.[182]  An ALJ "evaluate[s] every medical opinion [he or she] receives."[183]  20 C.F.R. § 404.1527(c)(2) states in pertinent part:

> Generally, [the ALJ] give[s] more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.[184]

---

[179] *See id.*
[180] *Id.*
[181] *See id.*
[182] D.I. 12 at 12-16.
[183] 20 C.F.R. § 404.1527(c).
[184] *Id.* § 404.1527(c)(2).

If the ALJ does not give the treating source controlling weight, then the ALJ considers the following factors in deciding the weight to give to a medical opinion:[185] length of treatment relationship and the frequency of examination;[186] nature and extent of the treatment relationship;[187] supportability with the relevant medical evidence;[188] consistency with the record as a whole;[189] specialization;[190] and other factors which tend to support or contradict the opinion.[191] The Third Circuit has stated that "[a]lthough we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."[192]

In *Burnett v. Commissioner of Social Security Administration*, the Third Circuit found the "ALJ did err by reason of his failure to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination."[193] Although the ALJ may determine credibility, she must indicate that evidence she rejects and her reasons for discounting it.[194] "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."[195]

---

[185] *Id.*
[186] *Id.* § 404.1527(c)(2)(i).
[187] *Id.* § 404.1527(c)(2)(ii).
[188] *Id.* § 404.1527(c)(3).
[189] 20 C.F.R. § 404.1527(c)(4).
[190] *Id.* § 404.1527(c)(5).
[191] *Id.* § 404.1527(c)(6).
[192] *Fargnoli*, 247 F.3d at 42.
[193] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000).
[194] *Id.*
[195] *Id.*

Here, the ALJ provides two conclusory sentences to support her determination to not give Dr. Washington's opinion controlling weight as a treating physician.[196]  First, she states, "[w]hile recognizing that Dr. Washington is a treating medical source, the undersigned does not accept these opinions, as they are inconsistent with the record as a whole."[197]  Second, the ALJ adds, "[m]oreover, the medical record does not show the severe symptomology that Dr. Washington alleges."[198]  The ALJ does not provide any reasoning as to what particular evidence in the record is inconsistent with Dr. Washington's opinion.

Plaintiff contends the ALJ's reasoning is "vague and renders the ALJ's analysis meaningless."[199]  Plaintiff further asserts even if the ALJ was not required to grant Dr. Washington's opinions controlling weight, she failed to indicate the weight attributed to to the doctor's opinions, and did not address her findings under the required factors in 20 C.F.R. § 404.1527(c)(2)-(6).[200]  While the ALJ was not bound by Dr. Washington's opinion based solely on her status as a treating psychologist, the ALJ's findings must be based on substantial evidence on the record and her reasoning should be sufficiently explained so this reviewing court does not have to guess regarding the evidence.[201] The ALJ failed to provide such explanation.  The ALJ correctly indicated a treating source should be weighed by the factors elucidated in § 404.1527(c)(2)-(6);[202] however, she failed to specifically apply any of the required factors to Dr. Washington's opinion.

---

[196] *See* D.I. 9 at 28.
[197] *Id.*
[198] *Id.*
[199] D.I. 12 at 14.
[200] *Id.*
[201] *Id.*
[202] D.I. 9 at 28.

Instead, the ALJ simply held Dr. Washington's opinions were "inconsistent with the record as a whole" and "the medical record [did] not show the severe symptomology that Dr. Washington alleges."[203]  These conclusory statements do not give the court any basis to determine what specific medical evidence was considered in her analysis.

 Defendant counters the ALJ rejected Dr. Washington's opinion and afforded it reduced weight because a review of the doctor's objective evaluations during her regular mental status examinations reflect plaintiff related well and was alert, calm, cooperative, fully oriented, appropriately dressed, and attentive, with an anxious, depressed, and tearful mood; no flight of ideas or racing thoughts; no cognitive defects; coherent communication; fair insight and judgment; no homicidal ideation or psychosis; and no suicidal ideation.[204]  While this may or may not be true, it is merely attorney argument as to why Dr. Washington was not afforded controlling weight in the absence of appropriate reasoning.

Similarly, the ALJ does not provide an explanation for crediting Dr. Simon's opinion with only "some weight" despite the doctor's in-person evaluation of plaintiff. The ALJ's conclusory statement provides, "[t]he undersigned assigns some weight to Dr. Simon's opinion to the extent that it is consistent with the longitudinal medical record and the [RFC] as assigned."[205]  It is unclear what weight is given to any part of Dr. Simon's opinion.

Therefore, similar to *Burnett*, in the instant matter, the ALJ failed to evaluate and

---

[203] *Id.*
[204] *Id.* at 1590-97.
[205] *Id.* at 27.

address medical evidence contrary to her findings to enable the court to "properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence."[206]  Accordingly, the issue is remanded to the ALJ to apply the factors in 42 U.S.C. § 405.1527(c)(2)-(6) to explain why the Dr. Washington's opinions were not given controlling weight, and to advise as to the bases for the weight assigned to Dr. Simon's testimony.

### b.    State agency consultants

When determining plaintiff's RFC, the ALJ accorded significant weight to non-examining state agency consultant psychologists, Drs. Bancoff and Aldridge,[207] instead of the treating physician, Dr. Washington.[208]  Plaintiff argues the ALJ uncritical acceptance of opinions of non-examining psychologists over the treating physician was improper.[209]

Under this circuit's precedent, "[t]reating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"[210]  A court must give greater weight to the findings of a treating physician than to those of a doctor who examined the claimant only once or not at all.[211]  When a physician has treated a patient over an extended period of time, his opinion usually should be afforded

---

[206] *Burnett*, 220 F.3d at 121.
[207] D.I. 9 at 26-27.  *See supra* Part II.C.2.e. (discussing Dr. Bancoff's and Dr. Aldridge's opinions and reports).
[208] *See supra* Part IV.B.1.a.
[209] D.I. 12 at 15.
[210] *Plummer*, 186 F .3d at 429 (quoting *Rocco v. Heckler,* 826 F.2d 1348, 1350 (3d Cir. 1987)).
[211] *Mason*, 994 F.2d at 1067.

great weight.[212]  A treating physician's opinion is given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [in the claimant's] case record."[213]

A final disability determination must not conflict with an opinion deserving of controlling weight.  An ALJ may reject a treating physician's opinion "only on the basis of contradictory medical evidence."[214]  That opinion may not be rejected for no reason or the wrong reason.[215]  When there is contradictory medical evidence, the ALJ must carefully evaluate how much weight to give the treating physician's opinion, and provide an explanation as to why the opinion is not given controlling weight.[216]

Here, the ALJ "assign[ed] significant weight to Drs. Bancoff and Aldridge's opinions as they are generally consistent with the longitudinal medical history and the [RFC] assigned."[217]  The ALJ also "assign[ed] significant weight to Drs. Brandon and Tucker-Okine's opinions to the extent that they are consistent with the longitudinal medical and the [RFC] as assigned."[218]  However, similar to the reasoning for not affording Dr. Washington's opinions controlling weight, assigning significant weight to non-treating consultants was not sufficiently explained by the ALJ.  The Third Circuit has repeatedly found the ALJ should not rely on opinions from these sources when

---

[212] *See Dass v. Barnhart*, 386 F. Supp 2d 568, 576 (D. Del. 2005).
[213] *Fargnoli*, 247 F.3d at 43.
[214] *Morales v. Apfel,* 225 F.3d 310, 318 (3d Cir. 2000).
[215] *Id.* at 317.
[216] *Gonzalez*, 537 F. Supp. 2d at 660.
[217] D.I. 9 at 27.
[218] *Id.  See supra* Part II.C.2.d.

there is well-supported contradictory evidence.[219]

On remand, the ALJ should carefully consider Dr. Washington's opinion and specifically discuss both the basis for rejecting Dr. Washington's opinion, and for accepting the opinions of the state agency consultants, Drs. Brandon, Tucker-Okine, Bancoff, and Aldridge.

### 2.    Plaintiff's Testimony

Plaintiff argues the ALJ erred in evaluating the credibility of plaintiff's subjective complaints.[220]  In evaluating symptoms, the ALJ must "consider all . . . symptoms, including pain."[221]  Also, the ALJ must determine whether such symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence."[222]  As finder of fact, the ALJ is given considerable discretion in making credibility findings.[223]  Once it is determined that an impairment "could reasonably be expected to produce . . . symptoms, such as pain," its intensity and persistence must be evaluated to determine the effect on the ability to work.[224]

Under this evaluation, a variety of factors are considered, such as: (1) "objective medical evidence," (2) "daily activities," (3) "location, duration, frequency and intensity,"

---

[219] *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008) (holding that opinions from physicians are entitled to "minimal weight" when they are not based on a personal examination of the claimant and premised upon a misunderstanding of the entire record); *Dorf v. Brown*, 794 F.2d 896, 901-902 (3d Cir. 1986) ("[I]t is improper for an ALJ to credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with the testimony of the treating physician."); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986) (physicians who do not examine a claimant generally have less probative force than opinions from examining sources).

[220] D.I. 12 at 16-18.

[221] 20 C.F.R. § 404.1529(a).

[222] *Smith v. Astrue*, No. 08-4634, 2009 WL 5126559, at *3 (3d Cir. 2009) (quoting 20 C.F.R. § 404.1529(a)).

[223] *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).

[224] 20 C.F.R. § 404.1529.

(4) medication prescribed, including its effectiveness and side effects, (5) treatment, and (6) other measures to relieve pain.[225]  Subjective complaints of pain which are supported by medical evidence should be given great weight.[226]  Thus, the ALJ "determine[s] the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it."

Here, the ALJ conceded plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but his statements concerning the intensity, persistence, and limiting effects of his symptoms were "not credible to the extent they are inconsistent with the above [RFC] assessment."[227]  Her determination that plaintiff's statements were only partially credible, is not based on substantial evidence in the record.  The ALJ's reasons for rejecting plaintiff's credibility as to the intensity, persistence and limiting effects of these symptoms can be broken down into three parts.

First, the ALJ's credibility determination was inappropriately based almost entirely on her layperson observation of plaintiff at the hearing.  The ALJ noted,

> [Plaintiff] appeared to be abulating normally in and out of the hearing room.  He sat normally through the hearing and got up and down normally. Despite testimony to the contrary, he demonstrated normal memory, concentration and attention through the hearing.  He exhibited normal eye contact and demeanor and did not seem to be anxious or nervous.[228]

The Third Circuit has denounced such a "sit and squirm" test.[229]  There was significant

---

[225] *Id.* § 404.1529(c).
[226] *See Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984).
[227] D.I. 9 at 23.
[228] *Id.* at 24.
[229] *See Van Horn v. Schweiker*, 717 F.2d 871, 874 (3d Cir. 1983).  *See also Frankenfeld v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988) (finding error in ALJ's rejection of credible medical evidence based solely on observation of claimant at the hearing and testimony as to claimant's daily activities).

objective medical evidence contrary to the ALJ's observations.  For example, Dr. Simon tested plaintiff's memory and determined while plaintiff had a good immediate memory, he also had a poor short-term memory.[230]  In addition, Dr. Brandon opined plaintiff had moderate difficulties in maintaining concentration, persistence, and pace.[231]  These medical opinions were consistent with plaintiff's testimony that he had problems with memory and concentration.[232]  This type of consistency between objective medical evidence and plaintiff's testimony trumps an ALJ's observations during the hearing.

Second, the ALJ relied on plaintiff's request to be released back to work with no limitations in November 2009.[233]  An ALJ is not permitted to "cherry-pick" from the record evidence supporting her conclusion while ignoring other evidence that negates the probative value of the evidence cited.[234]  Here, while the record clearly indicates plaintiff's request to be released to work, very next treatment note–nine days later–shows plaintiff was unable to return to his usual job after his request, which the ALJ conveniently omitted.[235]

Third, the ALJ expressed an inconsistency existed with plaintiff's reported depression because of his back pain, because "the objective testing reveals that the degenerative disc disease is quite mild."[236]  Again, this statement only provides half the story because the objective medical evidence notes in the same Exhibit which the ALJ

---

[230] D.I. 9 at 1134-35.
[231] *Id.* at 1139-49.
[232] *Id.* at 902.
[233] *Id.* at 24.
[234] *See Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000) (holding that the ALJ may not simply rely on "the pieces of the examination reports that supported [her] determination," at the exclusion of other evidence).
[235] D.I. 9 at 1122.
[236] *Id.* at 1083.

referenced: "worsening symptoms of low back pain with numbness radiating down entire right leg and partially down left [leg]."[237]  Any apparent inconsistency between plaintiff's testimony regarding his back pain and the record appear to be tenuous at best.

Defendant counters the ALJ's opinion is based on substantial record evidence. First, defendant advances the ALJ's reasoning that the degenerative disc disease is mild according to the medical tests in the record.[238]  However, as previously stated, this narrow reading of the objective medical evidence fails to take into account the worsening of the disease as explained in the record.[239]

Second, defendant hinges on the conclusions of the four state agency medical consultants' findings.[240]  However, as discussed herein, the ALJ failed to provide sufficient reasoning why the non-examining consultants should be given significant weight over the treating physician.[241]

Third, defendant notes plaintiff asked a physician in early November 2009 to release him to his job as a housekeeper without any limitations.[242]  Again, as previously discussed, this fails to consider that, shortly after his request, plaintiff was unable to return to his employment.[243]

Lastly, defendant contends plaintiff's conservative treatment for his back consisted of injections, physical therapy, and medications, and did not involve any

---

[237] *Id.*
[238] D.I. 15 at 22.
[239] D.I. 9 at 1083.
[240] D.I. 15 at 22.
[241] *See supra* Part VI.B.1.
[242] D.I. 15 at 22.
[243] D.I. 9 at 1122.

surgery or recommendations for surgery render his condition as not disabling.[244]
However, neither defendant nor the ALJ point to any authority that provides a bright-line
requirement if surgery is not required, then the claimant is not disabled.[245]

On remand, the ALJ should address plaintiff's hearing testimony and adequately
explain the reasoning for not accepting his testimony in relation to the objective medical
evidence in the record.

### 3.      VA's Disability Rating

On August, 9, 2010, the VA found plaintiff's major depressive disorder was 70
percent disabling as of December 2009.[246]  Plaintiff contends the ALJ erred by not
adequately considering the disability determination by the VA.[247]

A determination made by another governmental agency that an individual is
disabled or not disabled is not binding on the Commissioner.[248]  The Third Circuit,
however, recognizes that VA disability determinations are "entitled to substantial
weight."[249]

Here, the ALJ did not give specific reasons why the determination by the VA was
not given substantial weight, or attributed reduced or no weight, based on the *facts* of
the case.  Instead, the ALJ rejected the VA determination solely on the differences
between the standard for disability between the VA and the SSA, with no analysis of the
facts.[250]

---

[244] D.I. 15 at 22.
[245] *See id.*; D.I. 9 at 18-30.
[246] D.I. 9 at 1992-95.
[247] D.I. 12 at 18.
[248] 20 C.F.R. § 404.1504.
[249] *See Kane v. Heckler*, 776 F.2d 1130, 1135 (3d Cir. 1985).
[250] *See* D.I. 9 at 26.

Defendant advances the differences between the VA and the SSA processes for determining disability.[251]  The Social Security disability process is nonadversarial, and not a pro-claimant system; with the burden on the claimant to show he is disabled.[252]  The VA's disability system, on the other hand, is both nonadversarial and pro-claimant.[253]  Lastly, the Social Security's determination of disability considers an individual's age, education, and work history and process has detailed medical-vocational guidelines to direct or guide the analysis, with age being a significant factor.[254]  The VA regulations have no medical-vocational guidelines, and under its regulations, age cannot be considered.[255]

None of this reasoning, however, exists in the ALJ's opinion.[256]  The ALJ merely noted "this veteran's claim is based upon a different statutory scheme and not Social Security rules and regulations."[257]

On remand, the ALJ should address the VA disability rating and appropriately explain her reasoning consistent with the medical evidence in the record.

### 4.    VE's Testimony

Plaintiff's final argument is the ALJ erred in formulating plaintiff's RFC and hypothetical questioning by relying on the VE's responses to the ALJ's hypothetical questioning to find plaintiff not disabled.[258]

---

[251] *See* D.I. 15 at 23.
[252] 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a).
[253] *See Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998) ("[The Federal Circuit] and the Supreme Court both have long recognized that the character of the veterans' benefits statutes is strongly and uniquely pro-claimant.").
[254] *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1560-404.1569a.
[255] *See* 38 C.F.R. § 4.19.  *See also Smith v. Shinseki*, 647 F.3d 1380, 1384-85 (Fed. Cir. 2011).
[256] *See* D.I. 9 at 26.
[257] *Id.*
[258] *See* D.I. 12 at 18-20.

"A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."[259]  "[G]reat specificity' is required when an ALJ incorporates a claimant's mental or physical limitations into a hypothetical."[260] "Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence."[261]

Plaintiff relies on *Ramirez v. Barnhart*[262] to argue when a hypothetical question does not accurately describe all of plaintiff's mental *and* physical limitations, the opinion of the VE is not supported by substantial evidence.[263]  In *Ramirez*, the Third Circuit found error when an ALJ relied on hypothetical questioning which was inconsistent with the ALJ's own finding that the claimant often suffered from deficiencies in concentration, persistence, or pace.[264]  Despite this finding, the ALJ accepted the VE's opinion the claimant could perform work that would have daily production quotas.[265]  The omission of claimant's mental limitations in the ALJ's hypothetical questioning regarding how a claimant that often suffers from pace deficiencies could perform work with daily production quotas was reversible error.[266]

Here, the ALJ's hypothetical questioning of the VE included plaintiff's physical

---

[259] *Crupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).
[260] *Ramirez v. Barnhart*, 372 F.3d 546, 554-55 (3d Cir. 2004) (quoting *Burns v. Barnhart*, 312 F.3d 113, 122 (3d Cir. 2002)).
[261] *Burns*, 312 F.3d at 123.
[262] 372 F.3d 546 (3d Cir. 2004).
[263] *See* D.I. 12 at 18-20.
[264] *Ramirez*, 372 F.3d at 554.
[265] *Id.*
[266] *Id.* at 554-55.

limitations, but omitted his mental limitations.[267]  The ALJ specifically found plaintiff's mental limitations to include severe impairment of depression and substance abuse.[268] These limitations were not included in the ALJ's hypothetical questioning.[269]  The only seemingly mental limitations the ALJ included related to plaintiff's inability to work at a production pace, meaning the hypothetical question presupposed a person who would need to be paid "by the piece" rather than having a weekly or monthly quota.[270]  Similar to *Ramirez*, however, the ALJ did not indicate how plaintiff's severe impairment of depression and substance abuse would effect his ability to work.

Plaintiff's mental limitations, including the ALJ's own finding of severe mental impairments, are well-documented in the record.[271]  The ALJ failed to evaluate and address this medical evidence contrary to her findings to enable the court to "properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence."[272]  As a result, this court cannot assess whether the ALJ's determination that plaintiff has the RFC to perform "simple unskilled, light jobs" or "unskilled, sedentary jobs" is supported by substantial evidence.

## VII.    ORDER AND RECOMMENDED DISPOSITION

For the reasons contained herein, I recommend that:

(1) Plaintiff's motion for summary judgment (D.I. 11) be GRANTED, and remanded for further consideration consistent with this opinion.

---

[267] *See* D.I. 9 at 912-14.
[268] *Id.* at 20-29.
[269] *Id.* at 912-14.
[270] *Id.* at 912.
[271] *See e.g.*, D.I. 9 at 20-29.
[272] *See Burnett*, 220 F.3d at 121.

(2) Defendant's cross-motion for summary judgment (D.I. 14) be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within ten (10) days after being served with a copy of this Report and Recommendation.

The parties are directed to the Court's standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Date:  October 22, 2013                    /s/   Mary Pat Thynge_____
                                           UNITED STATES MAGISTRATE JUDGE